UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JTH TAX LLC d/b/a LIBERTY TAX SERVICE, <br><br> Plaintiff, <br><br> v. <br><br> NISAR AHMED d/b/a "TAX SERVICES," <br><br> Defendant. | Civil Action No.: _____ |

## LIBERTY'S VERIFIED COMPLAINT

Plaintiff JTH Tax LLC, d/b/a Liberty Tax Service ("Liberty"), by and through its undersigned attorneys, alleges for its Verified Complaint against Defendant Nisar Ahmed ("Ahmed") d/b/a "Tax Services" as follows:

## INTRODUCTION

1. Liberty is franchisor of Liberty Tax Service® tax preparation service centers, which are located throughout the United States, including in Illinois.

2. Ahmed is a former Liberty franchisee who, along with his former partner, operated a Liberty franchise territory in Chicago pursuant to a Franchise Agreement with Liberty.

3. Ahmed breached his Franchise Agreement by operating a competing tax preparation business called "Tax Services" using Liberty's confidential information.

4. Ahmed began operating his competing tax preparation business while he was still under his Franchise Agreement, in direct violation of the in-term covenant not to compete with Liberty.

5. After the Franchise Agreement terminated, Ahmed continued to operate his

competing tax preparation business, and solicit Liberty's customers, in direct violation of his post-term covenant not to compete, pursuant to which he agreed to refrain from directly or indirectly offering tax preparation services within 25 miles of his former Liberty territory for two years.

6. Liberty seeks in this litigation: (1) compensatory damages arising out of Ahmed's breaches of contract; (2) $3,286.22 in unpaid and accruing accounts receivable, plus interest, (3) liquidated damages; (4) exemplary/punitive damages, if applicable; (5) attorneys' fees and costs; and (6) such other relief the Court deems necessary and just.

## PARTIES

7. Liberty is a Delaware limited liability company with its principal place of business at 2378 Liberty Way, Virginia Beach, Virginia 23456.

8. Ahmed is a citizen of the State of Illinois who, upon information and belief, resides at 8215 Menard Ave., Morton Grove, IL 60053. Upon information and belief, Ahmed operates a company doing business as "Tax Services" at 4344 West 51st Street, Unit B, Chicago, IL 60632.

## JURSIDICTION AND VENUE

9. This Court has personal jurisdiction over Ahmed because he is a natural person who resides in Illinois.

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because complete diversity of citizenship exists between Plaintiff and Defendant, and the amount in controversy exceeds $75,000.00.

11. This action is properly venued in the Northern District of Illinois pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) because Ahmed resides within this District, and a substantial part of the events or omissions giving rise to Liberty's claims occurred within this District.

## FACTUAL BACKGROUND

12. Liberty, one of the largest tax franchisors in the United States, is the franchisor of Liberty Tax Service® income tax preparation service centers located throughout the United States, including in Illinois, where Ahmed operated his Liberty franchise location.

13. Pursuant to the terms of its franchise agreements, Liberty discloses its confidential information, including, but not limited, to customer names, phone numbers, social security numbers, and tax return information, as well as Liberty's operational methods, promotional plans, marketing strategies, pricing structures, business strategies, and training materials (collectively, "Confidential Information") to franchisees, including without limitation, through its confidential and proprietary Operations Manual, training manuals, training programs, and in providing guidance and assistance to franchisees.

14. In return, Liberty requires its franchisees to agree that, upon expiration or termination of their franchise agreement, they will never use, disclose, or permit the use or disclosure of Liberty's Confidential Information. Liberty further requires its franchisees to agree that, upon expiration or termination, they will not use any literature and forms received from Liberty, deliver to Liberty all customer information, and deliver to Liberty all copies of its Operations Manual and any updates thereto.

15. Liberty, has grown from five offices in 1998 to over 3,000 offices today, and is now one of the largest tax preparation franchises in the United States.

16. Liberty's busiest time of year are the months of January through April, during which time Liberty generates approximately 90% of its annual revenue.

A. **The Franchise Agreement**

17. On or about January 22, 2013, Ahmed, along with his former partner Syed Ekram ("Ekram"), entered into a franchise agreement with Liberty (the "Franchise Agreement"). A true

copy of the Franchise Agreement is attached hereto as **Exhibit A**.

18. Ahmed and Ekram jointly operated a Liberty territory with an office located at 5622 S. Pulaski Road, Chicago, Illinois 60629 (the "Franchise Location") pursuant to the Franchise Agreement.

19. Under the Franchise Agreement, Liberty granted Ahmed and Ekram permission to use its trademarks and trade on its goodwill and reputation. Liberty further provided, *inter alia*, Ahmed and Ekram with training in its operation, marketing, advertising, sales, and business systems; a copy of its confidential operating, marketing, and advertising materials, including its confidential and proprietary Operations Manual, which are not available to the public or to anyone who is not part of Liberty's business system; and access to its Confidential Information, including highly valuable customer lists and information. Ex. A at §§ 5(a)–(b), (d); §§ 6(b)(i)–(vii); §§ 12(a)–(c).

20. Pursuant to Sections 4(d), (e) and (f) of the Franchise Agreement, Ahmed and Ekram agreed to pay monthly royalties in the amount of 14% of gross receipts and monthly advertising fees in the amount of 5% of gross receipts. *Id*. at § 4(d)–(f).

21. Under Section 4(g) of the Franchise Agreement, interest on amounts due and owing by Ahmed to Liberty compounds daily at a rate of 18% per annum. *Id*. at § 4(g).

22. In Section 9 of the Franchise Agreement, upon termination of the Franchise Agreement, Ahmed and Ekram agreed to, *inter alia*, immediately: (1) pay all amounts due and owing to Liberty; (2) stop identifying as a Liberty franchisee and refrain from using or disclosing Liberty's Confidential Information and trade secrets; (3) return all customer lists, tax returns, files, and records; and (4) adhere to all post-termination non-competition and non-solicitation covenants. *Id*. at §§ 9(b), 9(d), 9(g)–(i), 9(k).

23. In Section 10(a) of the Franchise Agreement, Ahmed and Ekram agreed to an in-term covenant not to compete, pursuant to which they agreed to not directly or indirectly prepare or electronically file income tax returns or offer financial products except in their capacity as a Liberty franchisee during the term of the Franchise Agreement. *Id*. at § 10(a).

24. In Section 10(b) of the Franchise Agreement, Ahmed and Ekram agreed to a post-termination covenant not to compete within twenty-five miles of their Liberty franchise territory for two years following termination of the Franchise Agreement. *Id.* at § 10(b).

25. Pursuant to Section 10(c) of the Franchise Agreement, in the event that they failed to comply with either covenant not to compete in Section 10(a) & (b), Ahmed and Ekram agreed to pay "liquidated monetary damages," including "monetary damages, royalties and advertising fees as set forth in paragraph 4 . . . against the greater of (1) your Gross Receipts in each Territory in which you are in breach during your last fiscal year (May 1 – April 30) of operation as a Liberty franchisee . . . or (2) your revenue received in breach of a covenant not to compete. In either event, you agree that this dollar figure shall be multiplied by two (2) to give consideration to lost repeat and referral business to Liberty . . . [and] the parties further acknowledge that the full measure of damages to Liberty is greater, as such a breach causes Liberty damage to the integrity of Liberty's franchised system, loss of franchisee and customer goodwill and irreparable harm." *Id.* at § 10(c).

26. In Section 10(d) of the Franchise Agreement, Ahmed and Ekram agreed, for a period of two years following termination, to not solicit the patronage of any person or entity served by their Liberty franchise for the prior twelve months for the purpose of offering income tax preparation or electronic filing of tax returns. *Id*. at § 10(d).

27. Ahmed and Ekram also agreed under Section 10(f) of the Franchise Agreement "not to do any act that is, harmful, prejudicial or injurious to Liberty." *Id*. at § 10(f).

5

28. Ahmed and Ekram agreed "that the provisions of Paragraph 10 are reasonable, valid and not contrary to the public interest," and agreed to "waive all defenses to the strict enforcement [of Paragraph 10]." *Id*. at § 10(h).

29. Pursuant to Section 12(c) of the Franchise Agreement, Ahmed and Ekram acknowledged that Liberty's Confidential Information was to be used only in connection with their Liberty franchise, and further agreed to never use or disclose the Confidential Information for the benefit of any person or entity outside the Liberty Tax Service system during or after the termination or expiration of the Franchise Agreement. *Id*. at § 12(c).

30. Pursuant to Section 10(i) of the Franchise Agreement, Ahmed and Ekram agreed that "[a]ll of the covenants contained in this section 10 shall survive any termination or expiration of this Agreement." *Id*. at § 10(i).

31. Section 17(a) of the Franchise Agreement provides that "Virginia law governs all claims that in any way relate to or arise out of this Agreement or any of the dealings of the parties hereto."

32. Ahmed and Ekram personally guaranteed the Franchise Agreement. *Id*. at § 23.

**B. <u>2019 Renewal of Franchise Agreement</u>**

33. On or about May 1, 2019, Ahmed and Ekram entered into a new franchise agreement that effectively renewed the terms of the Franchise Agreement (the "Renewal"). A true copy of the Renewal is attached hereto as **Exhibit B**.

34. The Renewal terms are substantially similar to the terms of the Franchise Agreement. In all subsequent allegations, "Franchise Agreement" refers collectively to the Franchise Agreement and Renewal.

35. The term of the Renewal was five years from the effective date. *Id.* at § 2(a).

36. Ahmed and Ekram personally guaranteed the Renewal. *Id*. at § 26.

**C. Breach of the In-Term Covenant Not to Compete and Termination of the Franchise Agreement**

37. In or around August 2021, Liberty learned that Ahmed was fraudulently filing tax returns and filing tax returns through a competing tax preparation business located at 4344 West 51st Street, Unit B, Chicago, IL 60632 (the "Competing Location") during the term of the Franchise Agreement in violation of several provisions of the Franchise Agreement.

38. On or about August 17, 2021, Liberty sent Ahmed and Ekram a letter demanding that they cure the in-term breaches of the Franchise Agreement ("Notice to Cure"). A true copy of the Notice to Cure is attached hereto as **Exhibit C**.

39. Ahmed and Ekram failed to cure the breaches identified in the Notice to Cure. As such, Liberty sent a letter dated October 25, 2021, notifying Ahmed and Ekram of the immediate termination of the Franchise Agreement (the "Termination Letter"). A true copy of the Termination Letter is attached hereto as **Exhibit D**.

40. The Termination Letter reminded Ahmed and Ekram of their post-termination obligations under the surviving terms of the Franchise Agreement, including but not limited to their obligations to: (a) immediately pay all amounts due and owing to Liberty; (b) forever refrain from using Liberty's Confidential Information and trade secrets; and (c) refrain for two years following termination from operating a competing tax preparation business, soliciting Liberty's clients, and transmitting tax returns within 25 miles of their former Liberty franchise territory. *Id.*

41. As of the date of the Termination Letter, Ahmed and Ekram owed $2,161.64 in unpaid and accruing accounts receivables.

42. Following the Termination Letter, Liberty learned that Ekram is not, and has not been, involved in the ownership or operation of the Competing Location.

43. On January 4, 2022, Liberty entered into a separate franchise agreement with Ekram. A true copy of the January 4, 2022 franchise agreement is attached hereto at **Exhibit E**.

44. Ekram continues to operate the Franchise Location pursuant to the January 4, 2022 franchise agreement**.**

D. **Breach of Post-Term Covenant Not to Compete**

45. Following the termination of the Franchise Agreement, Ahmed has continued to offer tax preparation services at the Competing Location, doing business as "Tax Services," in violation of the post-term covenant not to compete. A true copy of Ahmed's "Tax Services" business card is attached hereto as **Exhibit F**.

46. The Competing Location is located less than one mile from the Franchise Location, in violation of the post-termination obligation.

47. Figure 1 below depicts (1) the Competing Location (4344 West 51st Street, Unit B, Chicago, IL), (2) the Franchise Location (5622 S. Pulaski Road, Chicago, IL), and (3) the franchise territory that is the subject of the Franchise Agreement (large area outlined in red).



*Figure 1*

48. Figure 2 below depicts the linear distance between the Competing Location and the Franchise Location, which totals just 4,424.21 feet (approximately 1.35 kilometers or 0.084 miles).



*Figure 2*

49. Ahmed is also violating the post-term covenants in the Franchise Agreement by using Liberty's Confidential Information, including customer lists and information, to contact and solicit Liberty's customers for the Competing Location.

50. For example, Ekram informed Liberty that Ahmed sent text messages to customers of the Franchise Location to solicit their business for the Competing Location.

51. Liberty customers of the Franchise Location confirmed that they have received text

messages from Ahmed following the termination of his Franchise Agreement soliciting their business for the Competing Location.

52. Figure 3 below is a screen capture provided by a Liberty customer, which depicts a text message sent by Ahmed following the termination of the Franchise Agreement:



*"This is Nisar [Ahmed] from tax place we moved out at 4344B W. 61st [sic] Street Chicago IL 06032 phone number is changed so call me this number for schedule for tax this year"*

*TAX SERVICES  
Nisar Ahmed  
Senior Tax Consultant  
4344B W. 61st Street  
Chicago IL 06032*

*Figure 3*

53. Upon information and belief, Ahmed will continue to use Liberty's Confidential Information and solicit Liberty's customers on behalf of Tax Services for the remainder of the restricted period (which is set to expire on October 25, 2023) in violation of the Franchise Agreement's non-solicitation and non-competition provisions.

54. Upon information and belief, Ahmed's use of Liberty's Confidential Information in connection with his operation of Tax Services and his solicitation of Liberty's customers has

11

caused confusion, and has harmed Liberty's brand, the integrity of its franchise system and the value of its Confidential Information.

55. As a result of the foregoing, Liberty has suffered both pecuniary damages and harm to its reputation, goodwill, franchise system and Confidential Information.

## COUNT I
### *Breach of the Franchise Agreement (Monetary Claim)*

56. Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

57. The Franchise Agreement is a valid and enforceable contract.

58. Liberty has performed every obligation and condition required under the Franchise Agreement.

59. Section 10(a) of the Franchise Agreement imposes a duty not to compete with Liberty during the term of the Franchise Agreement. *Id.* at § 10(a).

60. Ahmed breached Section 10(a) by transmitting tax returns through a competing tax preparation company while the Franchise Agreement was in effect, which deprived Liberty of royalty and advertising fees to which it was entitled under the Franchise Agreement. *Id.*

61. Under Section 9(d) of the Franchise Agreement, Ahmed agreed to pay all monies owed to Liberty immediately upon termination. *Id.* at § 9(d).

62. Ahmed breached Section 9(d) of the Franchise Agreement by failing to pay outstanding accounts receivable balance of $2,164.64, plus accrued and accruing interest.

63. Under Section 10(b) of the Franchise Agreement, Ahmed was required to refrain from offering tax preparation services within twenty-five miles of his former Liberty territory for two years following termination. Ex. B at § 10(b).

64. Ahmed breached Section 10(b) of the Franchise Agreement by offering tax preparation services within twenty-five miles of his former Liberty territory following termination

of the Franchise Agreement.

65. Under Section 10(d) of the Franchise Agreement, Ahmed was required to refrain from soliciting, within twenty-five miles of the franchise territory, any person served by his former Liberty office for two years following termination. Ex. B at § 10(d).

66. Ahmed breached Section 10(d) of the Franchise Agreement by soliciting Liberty's customers within twenty-five miles of his former Liberty territory following termination of the Franchise Agreement.

67. Under Section 9 of the Franchise Agreement, upon termination of the Franchise Agreement, Ahmed was obligated to immediately return Liberty's Confidential Information, including, but not limited to, all copies of Liberty's customer files, customer records and Operations Manual.

68. Ahmed breached Section 9 of the Franchise Agreement by failing to return Liberty's Confidential Information, including, but not limited to, all copies of Liberty's customer files, customer records and Operations Manual.

69. Under Section 12 the Franchise Agreement, Ahmed was obligated to never use or disclose Liberty's Confidential Information and trade secrets following the termination of the Franchise Agreement. Ex. B at § 12.

70. Ahmed breached Section 12 of the Franchise Agreement by using Liberty's Confidential Information in connection with his competing tax preparation business, Tax Services.

71. Ahmed's breaches of the Franchise Agreement are material.

72. Ahmed's breaches of the Franchise Agreement have harmed, and continue to harm, Liberty both before and after the Franchise Agreement was terminated.

73. As a direct and proximate result of the foregoing breaches, Liberty has suffered,

and will continue to suffer, damages in an amount to be proven at trial, for which Ahmed is liable, including, but not limited to, compensatory damages, consequential damages and disgorgement of profits.

## COUNT II
### *Breach of the Franchise Agreement (Equitable Claim)*

74. Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

75. The Franchise Agreement is a valid and enforceable contract.

76. Liberty has performed every obligation and condition required under the Franchise Agreement.

77. Ahmed's post-termination obligations survive termination of the Franchise Agreement. Ex. A § 17(i).

78. Under Section 10(b) of the Franchise Agreement, Ahmed was required to refrain from offering tax preparation services within twenty-five miles of his former Liberty territory for two years following termination. Ex. B at § 10(b).

79. Ahmed breached Section 10(b) of the Franchise Agreement by offering tax preparation services within twenty-five miles of his former Liberty territory following termination of the Franchise Agreement.

80. Under Section 10(d) of the Franchise Agreement, Ahmed was required to refrain from soliciting, within twenty-five miles of the franchise territory, any person served by his former Liberty office for two years following termination. Ex. B at § 10(d).

81. Ahmed breached Section 10(d) of the Franchise Agreement by soliciting Liberty's customers within twenty-five miles of his former Liberty territory following termination of the Franchise Agreement.

82. Under Section 9 of the Franchise Agreement, upon termination of the Franchise

Agreement, Ahmed was obligated to immediately return Liberty's Confidential Information, including, but not limited to, all copies of Liberty's customer files, customer records and Operations Manual.

83. Ahmed breached Section 9 of the Franchise Agreement by failing to return Liberty's Confidential Information, including, but not limited to, all copies of Liberty's customer files, customer records and Operations Manual.

84. Under Section 12 the Franchise Agreement, Ahmed was obligated to never use or disclose Liberty's Confidential Information and trade secrets following the termination of the Franchise Agreement. Ex. B at § 12.

85. Ahmed breached Section 12 of the Franchise Agreement by using Liberty's Confidential Information in connection with his competing tax preparation business, Tax Services.

86. Ahmed's breaches of the Franchise Agreement are material.

87. As a result of Ahmed's past, present, and potential breaches of the Franchise Agreements, Liberty suffered and will continue to suffer actual, substantial, and irreparable damages, including but not limited to:

    a. Loss of customer goodwill and loyalty;

    b. Loss of business opportunities and relationships to provide tax preparation services and related services;

    c. Loss of customers;

    d. Loss of profits;

    e. Loss of franchisee stability;

    f. Loss of ability to sell other franchises;

    g. Loss of value in confidential business information;

    h. Loss of competitive advantage in its franchise territories in New York;

    i. Attorneys' fees; and

    j. Cost of this action

  88. Upon information and belief, these breaches have caused and will continue to cause confusion in the minds of consumers between the services of Liberty and Ahmed's competing tax preparation company, Tax Services, and therefore pose a threat to the integrity of Liberty's franchise system and value of its Confidential Information.

  89. Liberty has been, and will continue to be, irreparably harmed by Ahmed's actions, and monetary damages are an insufficient remedy in that Liberty can only potentially quantify a limited loss of customers, but cannot take into account the continuing irreparable damage to the value of Liberty's Confidential Information, goodwill, customer loyalty, and its ability to sell franchises, all of which are caused by Ahmed's ongoing breaches of the Franchise Agreements.

  90. Liberty has been, and will continue to be, irreparably harmed by Ahmed's actions, and monetary damages are an insufficient remedy because his breaches of the Franchise Agreements and competition against Liberty pose a significant threat to the confidentiality and value of Liberty's Confidential Information.

  91. Unless his wrongful conduct is enjoined, Ahmed will continue to breach the Franchise Agreements by competing with Liberty, and by performing acts that are harmful, prejudicial or injurious to Liberty.

## **PRAYER FOR RELIEF**

WHEREFORE, Liberty prays for judgment against Ahmed as follows:

  1. For an order requiring Ahmed to return Liberty's Confidential Information to Liberty;

  2. For a monetary award against Ahmed in an amount to be proven at trial for amounts

due and owing to Liberty arising out of Ahmed's outstanding accounts receivable balance and liquidated damages pursuant to Section 10(c) of the Franchise Agreement;

       3.       For compensatory, expectancy and, if applicable, punitive damages arising from Ahmed's breaches of contract;

       4.       For a monetary award against Ahmed for Liberty's reasonable attorneys' fees and costs, in an amount to be proven at trial;

       5.       For pre- and post-judgment interest; and

       6.       For such other relief as the Court deems just and appropriate.

Dated: February 21, 2023            Respectfully submitted,

**GORDON REES SCULLY MANSUKHANI, LLP**
*Attorneys for JTH Tax LLC d/b/a Liberty Tax Service*

By:    */s/ Peter G. Siachos*
       Peter G. Siachos

1 N. Franklin Street, Suite 800
Chicago, Illinois 60606
Tel: (312) 565-1400
Fax: (312) 565-6511
psiachos@grsm.com

## **VERIFICATION**

CLIFFORD BIRNBAUM does hereby verify and state pursuant to 28 U.S.C. § 1746:

I am Regional Director for JTH Tax LLC d/b/a Liberty Tax Service ("Liberty"). I have read the foregoing Verified Complaint and know the content thereof and state the allegations are true and correct. I base this Verification on my own knowledge, except as to matters therein stated to be alleged upon information and belief and, as to those matters, I believe them to be true and correct. The grounds of my knowledge, information, and belief are derived from my position as Regional Director at Liberty, my personal involvement in the events underlying this litigation, and general investigation of the facts and circumstances described in the Verified Complaint, including, without limitation, my review of Liberty's records and conversations with Liberty employees, representatives, and franchisees.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 20th day of February, 2023.

                                                         DocuSigned by:

                                         _____
                                                       Clifford Birnbaum, Regional Director